# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CLIFTON BARDO, # B-20945,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-1193-JPG** |
| | ) | |
| **DONALD STOLWORTHY,** | ) | |
| **AUSTIN THOMAS,**[1] | ) | |
| **SANDRA FUNK,** | ) | |
| **JOSEPH SHREVE,** | ) | |
| **LT. BURTON,** | ) | |
| **and DEBORAH S. ZELASKO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Western Illinois Correctional Center ("Western"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  His claims arose while he was incarcerated at Centralia Correctional Center ("Centralia") and at Pinckneyville Correctional Center ("Pinckneyville").  Plaintiff is serving a 24-year sentence for a drug offense.  This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A , which requires the Court to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d

---

[1] Although Plaintiff lists this Defendant as "Warden Austin Thomas" in the caption, elsewhere in the complaint he refers to him as "Warden Austin."  This usage and Plaintiff's exhibits indicate that this Defendant's correct surname is Austin, and the Court shall refer to him this way.  The Clerk shall be directed to correct this Defendant's name to Thomas Austin.

1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards to Plaintiff's complaint, a number of his claims are subject to dismissal, but some shall proceed for further review.

## **The Complaint**

In addition to the six Defendants listed in the caption (who are included on the Court's docket sheet), Plaintiff lists ten other Defendants[2] whose names were apparently overlooked when the case was opened, due to Plaintiff's cramped handwriting and the poor quality of the copy (Doc. 1, p. 2).  However, he mentions only some of these individuals in his statement of

---

[2] These additional Defendants are:  Billie Greer, Officer H. Reed, Michael Maines, Jennifer Wallace, Major Muller, Lt. Stephen Johnson, Michael Edwards, Richard Root, C/O Wrangler, and C/O Wanack.  Plaintiff also includes several John Does and a Jane Doe.  The Clerk shall be directed to add these individuals as party Defendants.

claim.   Additionally, the statement of claim describes actions or omissions of five other individuals,[3] but Plaintiff failed to name them as Defendants, either in his list of parties or in his prayer for relief.

Plaintiff included 96 pages of exhibits with his complaint (Docs. 1-1, 1-2, 1-3, 1-4, and 1-5).   Voluminous exhibits such as these are discouraged at the preliminary review stage.   The Court shall analyze Plaintiff's claims based on the factual allegations contained in the 16-page complaint, and shall refer to certain exhibits only where necessary or helpful for clarification.

Plaintiff begins his narrative with the claims that his due process rights were violated by Defendants Johnson and Burton at Centralia, who found him guilty of two disciplinary reports (Doc. 1, p. 5).   The first report, issued May 19, 2014, was based on Plaintiff's braided hairstyle, which allegedly violated a prohibition against gang-related symbols (Doc. 1-1, p. 5).   The Adjustment Committee, made up of Defendants Johnson and Burton, found Plaintiff guilty of the infraction and punished him with two months of demotion to C-grade, two months of yard/gym denial, and six months of restriction on contact visits.   After Plaintiff filed a grievance, this disciplinary matter was remanded in December 2014 for a re-hearing, because due process safeguards were not followed (Doc. 1-1, p. 8).   Defendant Warden Austin told Plaintiff that his visitation rights would be restored, but this was not done, and a new hearing on the charges was not held within the 90-day time limit.   A new hearing was eventually conducted on April 5, 2015, by Defendant Shreve.   He refused to call Plaintiff's witnesses, and imposed the same punishment because Plaintiff had already served the time on the infractions.   The disciplinary violation remained on his record and was not expunged as Defendant Austin said it should have been (Doc. 1, pp. 5-6; *see also* Doc. 1-5, p. 8).

Plaintiff was charged with a second disciplinary violation on March 15, 2015, for

---

[3] These individuals are:  C/O Snyder, C/O Walls, Lt. Lively, C/O Snider, and C/O Sheffler.

improper conduct with a visitor (Doc. 1-2, p. 13).  Defendants Johnson and Burton again served on the Adjustment Committee.  They failed to call Plaintiff's witnesses, incorrectly stated on the hearing summary that Plaintiff had pled guilty to the offense, and failed to read his written statement.  They found him guilty, and informed him they would recommend him for a disciplinary transfer because of the first (hairstyle) disciplinary action.  This time, Plaintiff was punished with two months in segregation as well as two months of C-grade and gym/yard denial.

In March 2015, Plaintiff was denied a visitor even though he was supposed to be allowed non-contact visits at that time (Doc. 1, p. 6).  Defendant Zelasco (counselor) has "sided against" Plaintiff on his grievances over the disciplinary action, and interfered with the procedure that such grievances are to go directly to the grievance officer (Doc. 1, p. 7).

Plaintiff further complains that his outgoing mail is not being delivered to the recipients, and his incoming mail is being returned to the senders (Doc. 1, p. 7).  Property has been stolen from him and he has not been reimbursed.  *Id.*  He does not identify any Defendant or other individual who may have been responsible for these problems.

Defendant Lt. Johnson and C/O Snyder[4] have made threats and unprofessional comments to Plaintiff.  Some of Defendant Johnson's harassment and threats took place on March 17 and 18, 2015, while Plaintiff was on suicide watch and conducting a hunger strike.  Plaintiff claims Defendant Johnson's actions interfered with his mental health treatment; he states that he was seen by a mental health provider once a week (Doc. 1, p. 7).  Further, he believes Defendants Johnson and Burton have a grudge against him and have retaliated against him, as demonstrated by their imposition of "harsh penalties" against Plaintiff on the two disciplinary matters (Doc. 1, p. 8).

On April 22, 2015, Plaintiff was transferred from Centralia, with an ultimate destination

---

[4] C/O Snyder is not listed among the Defendants anywhere in the complaint.

of Western Illinois Correctional Center.  However, he was briefly housed at Pinckneyville before being transported to Western.  When he was directed to the Pinckneyville bus, Plaintiff informed the C/O that he was "not allowed" at Pinckneyville because of a lawsuit he had filed against a C/O there in 2002, but he was sent there anyway.

Plaintiff was awakened the next morning at Pinckneyville when Defendant Wanack, C/O Walls,[5] and an unidentified officer (Defendant John Doe #1) beat on his cell door.  Defendant Wanack yelled, "Nigger, we're gonna beat your ass . . . we're gonna kill you, get up [and] come here" (Doc. 1, p. 8).  He continued to threaten Plaintiff's life, and told Plaintiff he should hang himself, instructing him how to accomplish this.  He told Plaintiff that he and C/O Walls were fixing him a "real nice meal to eat" (Doc. 1, p. 9).  Plaintiff requested the crisis team and reported this incident; the counselor assured him he would leave in the morning and nothing would happen to him.

Soon thereafter, Defendant Wanack and C/O Walls returned; Walls opened the cell door and Wanack threw Plaintiff's food tray on the floor.  Plaintiff reported this incident as well, and was evaluated by a mental health counselor.  He gave the names of the officers to an Internal Affairs representative, and told him he was in great fear for his life.  These officials never followed up to provide Plaintiff with a food tray or check on his welfare.  Defendant Wanack returned at 2:45 p.m. to say that he would be waiting on Plaintiff when he got out, and he would not kill him now because he was on his way home.

On April 24, 2015, Plaintiff was to be transferred from Pinckneyville to Western. Defendants Wrangler and C/O John Doe #2 refused to feed Plaintiff breakfast before he left Pinckneyville.  Defendant Wrangler said, "That's the nigger and he won't eat while I'm here,"

---

[5] C/O Walls is not listed among the Defendants anywhere in the complaint.

adding that Plaintiff would never eat again if it was up to him (Doc. 1, p. 10).  Lt. Lively[6] and John Doe C/O's #2, #3,  and #4 took Plaintiff to the shower for a shakedown, where they forced him to spread his buttocks and remain in that position for more than two minutes in front of this group of officers.  He was then taken to the core hallway, where Defendant Wrangler, Lt. Lively, and Defendant John Doe C/O's #2, #3, #4, #5, and #6 were present; Defendant Jane Doe was working in the control booth.  Defendant Wrangler told Plaintiff he was "calling his boys in Western to let them know that [Plaintiff] was coming and to get him for us."  *Id*.  The other officers "replied yea in agreement."  *Id*.  When Plaintiff arrived at Western, an unknown C/O told him that they received a phone call on him and were waiting on him.

On May 1, 2015, Plaintiff had a hearing at Western on another disciplinary ticket that had been issued at Centralia, in which C/O Snider[7] stated that Plaintiff refused to remove the braids from his hair when ordered to (Doc. 1, p. 11; Doc. 1-4, p. 13).  He was found guilty in spite of his defense that his hair had not been braided, and that the C/O never identified what rule Plaintiff had violated.  Plaintiff was punished with 15 days segregation and 30 days C-grade.

On May 5 and May 13, 2015, while Plaintiff was in segregation, C/O Sheffler[8] denied his yard time.

Plaintiff seeks monetary relief from the following nine Defendants:  IDOC Director Stolworthy, Centralia Warden Thomas Austin, Billie Greer, C/O H. Reed, Michael Maines, Pinckneyville Warden Michael Edwards, Sandra Funk, Lt. Stephen Johnson, and Richard Root (Doc. 1, p. 13).

## Merits Review Pursuant to 28 U.S.C. § 1915A

---

[6] Lt. Lively is not listed among the Defendants anywhere in the complaint.
[7] C/O Snider is not listed among the Defendants anywhere in the complaint, and it is not clear whether this may be the same individual as C/O Snyder, or a different officer.
[8] C/O Sheffler is not listed among the Defendants anywhere in the complaint.

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:** Fourteenth Amendment claim against Defendants Johnson, Burton, Austin, Shreve, and Zelasco, for depriving Plaintiff of a liberty interest without due process in their handling of his two disciplinary actions at Centralia;

**Count 2:** First Amendment retaliation claim against Defendants Johnson and Burton for imposing harsh penalties on Plaintiff in the disciplinary actions;

**Count 3:** First Amendment claim for interference with Plaintiff's incoming and outgoing mail;

**Count 4:** Claim for the loss/theft of Plaintiff's personal property;

**Count 5:** Eighth Amendment claim against Defendant Johnson for verbally harassing and threatening Plaintiff;

**Count 6:** Eighth Amendment claim against Defendant Wanack and the John Doe Defendant Officer #1 for threatening to beat and kill Plaintiff; against the John Doe Defendant Officers #2, 3, and 4 for subjecting Plaintiff to a humiliating strip search; against Defendants Wrangler, John Doe Defendant Officers #2-6, and the Jane Doe Defendant Officer for threatening to arrange for officers at Western to harm Plaintiff; and against Defendants Wanack and Wrangler for withholding food;

**Count 7:** First Amendment retaliation claim against Defendants Wanack, Wrangler, the John Doe Defendant Officers #1-6, and the Jane Doe Defendant Officer, for threatening Plaintiff's life and safety, depriving him of food, and subjecting him to a humiliating strip search, because Plaintiff had filed suit against a fellow Pinckneyville officer;

Plaintiff's claims in Counts 6 and 7 above shall proceed for further consideration against some of the Defendants. However, the claims designated as Counts 1, 2, 3, 4, and 5 do not survive review under § 1915A and shall be dismissed. Any additional claims not specifically included in in the above counts are also dismissed at this time, without prejudice.

Furthermore, any potential claims against the individuals whose conduct was described in

the complaint, but whose names Plaintiff omitted from his list of parties (C/O Snyder, C/O Walls, Lt. Lively, C/O Snider, and C/O Sheffler), are dismissed without prejudice.  Because Plaintiff did not include these individuals among the listed Defendants, and did not mention their names in the prayer for relief, the Court concludes that he did not intend to pursue a claim for damages against any of these officers.

If Plaintiff seeks to include any of these individuals in this lawsuit, he must submit an amended complaint.  The same is true if he wishes to re-plead any of the claims that will be dismissed without prejudice.  Any amended complaint he may file shall be subject to a merits review under 28 U.S.C. § 1915A.  An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint.  Thus, an amended complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading.  Any improperly joined claims in an amended complaint shall be severed into one or more new actions, and an additional filing fee shall be assessed for each severed claim.  *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

## A. Claims to be Dismissed:

### Dismissal of Count 1 – Due Process

The complaint describes possible procedural flaws in the original hearing and/or the rehearing on Plaintiff's first disciplinary ticket (the hairstyle violation).  However, Plaintiff cannot maintain a constitutional claim based on these proceedings, because the relatively minor punishments imposed on him did not implicate any liberty interest that is protected by the

Fourteenth Amendment.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  As a result of Plaintiff's first ticket, he was demoted to C-grade and denied yard/gym access for two months. These punishments do not support a viable constitutional claim.  *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

Further, Plaintiff's visitation privileges were restricted for six months, allowing only "non-contact" visits for that period.  Again, a sanction of this nature does not violate the Constitution.  "[A] loss of visitation privileges – including contact visits – is not an atypical and significant hardship" that implicates a liberty interest.  *Woody v. Zatecky*, 594 F. App'x 311, 312 (7th Cir. 2015) (citing *Lekas v. Briley*, 405 F.3d 602, 605, 607-08, 613 (7th Cir. 2005) (no liberty interest deprived by denial of contact visits plus loss of other privileges); *Dunn v. Castro*, 621 F.3d 1196, 1202-03 (9th Cir. 2010); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002); *Ramos v. Lamm*, 639 F.2d 559, 580 n. 26 (10th Cir. 1980)).

For the same reasons, Plaintiff cannot maintain a due process claim for the visitation restriction, C-grade demotion, and gym/yard denial that resulted from his second disciplinary infraction (in March 2015 for misconduct with a visitor).  Nor did his additional punishments of two months in segregation and the disciplinary transfer violate the Constitution.

The failure to call Plaintiff's witnesses when the second disciplinary ticket was heard may have run afoul of the due process protections that govern prison disciplinary hearings.  *See*

*Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed).  Additionally, his claim that Defendants Johnson and Burton falsely claimed that he pled guilty suggests that Plaintiff is also challenging the sufficiency of the evidence against him.  *See Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence").  But even if the disciplinary proceeding did not comply with these due process requirements, the brief period of Plaintiff's confinement in disciplinary segregation – two months – does not support a claim for deprivation of a liberty interest without due process.

An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small").  For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships:  "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original).  The first prong of this two-part analysis focuses solely on the duration of disciplinary

segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

Here, Plaintiff was placed in disciplinary segregation for a mere two months, which is a very brief portion of his 24-year sentence. Moreover, he makes no claim that the conditions he faced in disciplinary segregation were any more onerous than the conditions prevailing in non-disciplinary segregation.

Finally, the disciplinary transfer does not implicate any constitutional rights. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).

The complaint therefore fails to state a claim upon which relief may be granted based on either of the disciplinary actions. **Count 1** shall be dismissed with prejudice.

**Dismissal of Count 2 – Retaliation – Defendants Johnson and Burton**

In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The plaintiff must have engaged in some protected First Amendment

activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).  The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Higgs*, 286 F.3d at 439.

In the case at bar, the complaint does not reveal any protected activity on Plaintiff's part that could have triggered the alleged "retaliation" against him by Defendants Johnson and Burton.  Plaintiff baldly claims that these Defendants retaliated against him by imposing "harsh penalties" on him in the two disciplinary actions described in Count 1.  But far from suggesting any improper retaliatory motive, the sequence of events shows that Plaintiff was charged with a disciplinary infraction for conduct (allegedly displaying a gang symbol in his hairstyle, and secondly, engaging in inappropriate physical contact with a visitor) that does not fall within the protection of the First Amendment.  As such, this conduct cannot form the basis of a claim for unconstitutional retaliation.  And Plaintiff does not describe any other protected activity on his part that might support a retaliation claim.

Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Plaintiff's claim for retaliation rests on just such conclusory statements – that Defendants Johnson and Burton have a grudge against Plaintiff, and their imposition of "harsh penalties" on him shows retaliation (Doc. 1, p. 8).  Even giving liberal construction to the complaint, s*ee Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009), Plaintiff's factual

allegations are insufficient to state a retaliation claim against Defendants Johnson or Burton. **Count 2** shall therefore be dismissed, but without prejudice.

### Dismissal of Count 3 – Mail Interference

A sporadic disruption of mail service will not violate the Constitution. Although the First Amendment "applies to communications between an inmate and an outsider," a valid claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment."(citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829, F.2d 608, 610 (7th Cir. 1987))).

The complaint suggests that there may have been an ongoing pattern of disruption of Plaintiff's incoming and/or outgoing mail. But he gives no examples or detail from which the Court might conclude that this was the case. Furthermore, he fails to connect these allegations to any of the Defendants, and does not even indicate the prison where the mail problems occurred. He thus fails to state a claim upon which relief may be granted on this count as well. **Count 3** shall also be dismissed without prejudice.

### Dismissal of Count 4 – Personal Property

As with the mail claim, Plaintiff again fails to associate any Defendant with the claim that his personal items were stolen. He also indicates that he won a first-level grievance over this matter, but has not yet received his property or any reimbursement.

The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth

Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). He must turn to that state tribunal if this matter is not resolved through the prison grievance process.

The civil rights claim designated as **Count 4** shall be dismissed with prejudice. This dismissal, however, shall not preclude Plaintiff from seeking relief in the Illinois Courts if necessary.

### Dismissal of Count 5 – Harassment & Threats by Defendant Johnson

Plaintiff's allegations in support of this count are too vague and conclusory to state a claim upon which relief may be granted. The only specific example he gives of Defendant Johnson's "unprofessional comments" is that he told Plaintiff he is "going to where there is nuts to butts" (Doc. 1, p. 7). Plaintiff does not describe the actual conduct that he concludes amounted to threats and harassment. He does not explain how Defendant Johnson's behavior interfered with his mental health treatment during March 2015. To the contrary, the fact that Plaintiff states he was "seen by mental health every week once a week" at that time suggests that Defendant Johnson did not prevent Plaintiff from receiving treatment. *Id.*

The Seventh Circuit has observed that, "harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment." *Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009); *see also Dewalt v. Carter*, 224 F.3d 607, 612

(7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). However, a cognizable Eighth Amendment claim may arise where serious verbal harassment is accompanied by physical conduct, and/or where an officer's harassing conduct places an inmate in danger of physical harm, such as a potential assault by other prisoners. *See Beal v. Foster*, No. 14-2489, 2015 WL 5853694, at *2-3 (7th Cir. Oct. 2, 2015). Plaintiff's allegations here with reference to Defendant Johnson's behavior do not provide any support for a "cruel and unusual punishment" claim. Accordingly, the claim in **Count 5** shall be dismissed without prejudice.

**B.  Claims to be Referred for Further Review:**

### Count 6 – Eighth Amendment – Death Threats and Strip Search

In contrast to Plaintiff's minimal and conclusory allegations regarding Defendant Johnson's alleged harassment, the sequence of events that unfolded soon after Plaintiff's arrival at Pinckneyville, taken together, indicate that Defendants Wanack, Wrangler, and some of the unknown Defendants may have violated Plaintiff's constitutional rights. These included repeated threats to beat and kill Plaintiff and to have officers at his next prison "get" him; the attempt to coerce Plaintiff to commit suicide; forcing him to strip and spread his buttocks for an inordinate length of time while a group of officers looked on; and withholding (and destroying) Plaintiff's meals. These actions appeared calculate to strike fear into Plaintiff, to humiliate him, and to emphasize that the Defendants had the power to harm and kill him.

Courts must apply an objective standard to determine whether a particular threat of death or harm, given all the circumstances, may amount to a constitutional violation. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). The pertinent inquiry is whether a

"reasonable" victim would fear for his or her life as a result of the threat; not whether this plaintiff experienced actual fear. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)). At this early stage of Plaintiff's case, his claims based on the threatening behavior of Defendants Wanack, Wrangler, and the John Doe Defendant Officers #1-6, survive review under § 1915A. The Jane Doe Officer, however, shall be dismissed at this time because the complaint states she was in the control booth, not the hallway where the other Defendants issued their threat to have Western officers "get" Plaintiff, and there is no indication that she participated in the threat.

Strip searches that are not related to legitimate security needs or are conducted in a harassing manner in order to humiliate and inflict psychological pain, may be found unconstitutional under the Eighth Amendment. Further, even if a valid penological reason existed for the search, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 719 F.3d 631, 634, (7th Cir. 2013) (group of inmates were strip searched together, gratuitously exposing prisoners' nude bodies to each other, while guards uttered demeaning comments) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)); *Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (a strip search conducted in a harassing manner intended to humiliate and inflict psychological pain could violate the Eighth Amendment); *see also Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (allegation of calculated harassment by strip searches stated Eighth Amendment claim), *cert. denied*, 484 U.S. 935 (1987).

Plaintiff's description of the strip search conducted by the John Doe Defendant Officers #2, 3, and 4 indicates that they forced him to expose himself for the purpose of humiliation, aside

from any legitimate reason they may have had for the search.  For this reason, Plaintiff may also proceed with this portion of Count 6.  However, Plaintiff must identify these officers by name before they can be served or ordered to respond.

To summarize, **Count 6** shall proceed at this time against Defendants Wanack, Wrangler, and the John Doe Defendant Officers #1-6.

### Count 7 – Retaliation

Plaintiff prefaced his narrative regarding the events at Pinckneyville described in Count 6 by noting that he had filed suit in 2002 against a Pinckneyville officer, and should not have been housed there again, presumably for his own protection.  The facts suggest that the threats and humiliation inflicted on Plaintiff by Defendants Wanack, Wrangler, and the John Doe Officers #1-6 were motivated by their desire to retaliate against Plaintiff for having brought that lawsuit.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g*., *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Identifying the suit and the act of retaliation is all that is required to state a claim of improper retaliation.  *Id.*

At issue here is whether Plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity (in this case, Plaintiff's 2002 lawsuit) was "at least a motivating factor" in the Defendants' decision to take the retaliatory action.  *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).  The complaint includes

sufficient factual allegations regarding a number of adverse actions taken by Defendants Wanack, Wrangler, and John Does #1-6, thus the retaliation claim in **Count 7** merits further review as to these parties.  However, the Jane Doe Defendant shall again be dismissed, because the facts do not indicate that she took any action whatsoever directed toward Plaintiff.

**<u>Other Defendants to be Dismissed</u>**

Despite the fact that Plaintiff included 16 named Defendants plus the John/Jane Does (Doc. 1, pp. 1-2) when he listed the parties he intended to sue, he included only nine of these in his prayer for relief (Doc. 1, p. 13).   He specifically requests monetary damages against Defendants Stolworthy (IDOC Director), Austin (Centralia Warden), Funk (Transfer Coordinator), Greer (Administrative Review Board), Reed (Officer), Maines (Correctional Officer), Johnson (Lieutenant), Edwards (Pinckneyville Warden), and Root (Centralia Assignment Coordinator).  Of this group, only Defendant Warden Austin and Defendant Johnson are mentioned in the narrative body of the complaint.  And as explained above (Counts 1, 2, and 5), Plaintiff has failed to state a claim against Defendant Austin or Defendant Johnson. Additionally, Plaintiff listed Defendants Wallace and Muller among the parties, but never mentioned them again either in the statement of claim or in the prayer for relief.

Plaintiff cannot maintain a claim against Defendants Stolworthy, Funk, Greer, Reed, Maines, Edwards, Root, Wallace, or Muller by merely including their names in the caption of the complaint, the list of Defendants, or naming them in the prayer for relief.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").  Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  *See Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).  Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him.  Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins*, 143 F.3d at 334.  Plaintiff made no factual allegations whatsoever to indicate that Defendants Stolworthy, Funk, Greer, Reed, Maines, Edwards, Root, Wallace, or Muller had any involvement in the incidents he complains of, including the surviving claims in Counts 6 and 7 based on events at Pinckneyville.

Plaintiff may think that he may seek damages from the Defendants who serve in supervisory positions, because they hold authority over the Defendants who report to them.  However, this is not the case – the doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions.  *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).  Instead, a Defendant may only be held liable for his/her own conduct – in other words, the Defendant must have been "personally responsible for the deprivation of a constitutional right."  *Id.*

For these reasons, Defendants Stolworthy, Funk, Greer, Reed, Maines, Edwards, Root, Wallace, and Muller shall be dismissed from this action without prejudice.

Although, as noted, Plaintiff did not include remaining Defendants Wanack, Wrangler, or the John Does in his prayer for relief, in keeping with the Court's obligation to liberally construe *pro se* prisoner complaints, the action shall be allowed to proceed against these individuals at this time.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

<u>**Pending Motion**</u>

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

<u>**Disposition**</u>

The Clerk is **DIRECTED** to correct Defendant Austin Thomas' name to "Thomas Austin."

The Clerk is **FURTHER DIRECTED** to add the following party Defendants:  Billie Greer, Officer H. Reed, Michael Maines, Jennifer Wallace, Major Muller, Lt. Stephen Johnson, Michael Edwards, Richard Root, C/O Wrangler, C/O Wanack, John Doe Correctional Officers #1-6, and Jane Doe Correctional Officer.

**COUNTS 1 and 4** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  **COUNTS 2, 3, and 5** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  Defendants **STOLWORTHY, AUSTIN, FUNK, SHREVE, BURTON, ZELASCO, GREER, REED, MAINES, WALLACE, MULLER, JOHNSON, EDWARDS, ROOT,** and the **JANE DOE CORRECTIONAL OFFICER** are **DISMISSED** from this action without prejudice.

As to the remaining claims in Counts 6 and 7, the Clerk of Court shall prepare for Defendants **WANACK** and **WRANGLER**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant,

and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.   Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 30, 2015**

*s/J. Phil Gilbert*
United States District Judge